UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**DAVID O. WILLIAMS,**

   Movant,

v.

**No. 4:22-cv-0344-P**
**(No. 4-21-cr-0035-P-1)**

**USA,**

Respondent.

### MEMORANDUM OPINION AND ORDER

David O. Williams ("Movant"), an inmate confined in the Federal Correctional Institute in Memphis, Tennessee, has filed a pro se "Motion for Sentence Reduction under 18 U.S.C. [§] 3582(c)(1)(A) Compassionate Release" ("Motion"). ECF No. 23. He seeks an early release and, alternatively, home confinement or placement in a halfway house. *Id.* at 1, 3. Having considered the Motion, the facts of this case, and the applicable law, the Court concludes that the Motion should be, and it hereby is, **DENIED without prejudice.**

### I. BACKGROUND

In April 2007 in the Western District of Louisiana, Movant was convicted of conspiracy to possess with intent to distribute methamphetamine and sentenced to 262 months with credit for time served, to be followed by a ten-year term of supervised release. ECF No. 2 at 18–20. In July 2016, the confinement portion of Movant's sentence was reduced to 240 months. ECF 2-1 at 41–42. In February 2020, the Western District of Louisiana Court granted Movant's motion for a reduced sentence under 18 U.S.C. §3582(c)(1)(A) as amended by the First Step Act ("the Compassionate Release Act"). ECF No. 2-1 at 42–44. His sentence was reduced to time served, and he was placed on ten years' supervised release. ECF No. 2 at 33–34; ECF No. 2-1 at 4, 44.

In February 2021, this Court accepted jurisdiction over Movant. ECF No. 1. On August 31, 2021, the Government alleged that Movant had violated several conditions of his supervised release. Movant pled true to violating conditions forbidding unlawful drug possession and use and conditions requiring substance abuse treatment. ECF No. 6, 2-3; ECF No. 22. On October 7, 2021, this Court revoked Movant's supervised release and sentenced him to eight months' imprisonment. ECF No. 20. On October 12, 2021, the Court entered a judgment conforming with the oral pronouncement. ECF No. 22.

Movant began serving his eight-month sentence in November 2021. *Id.* Now, he again seeks an early release or, alternatively, home confinement or placement in a halfway house. *Id.* at 1. He alleges that the following conditions support his request:

- his age (74);
- the denial of medical treatment;
- his underlying health problems, including chronic medical conditions, COVID-19 side effects, and respiratory syndrome;
- the risk of contracting another variant of COVID;
- the conditions of his incarceration, including lockdown, quarantine, the absence of programs, and distance from his family;
- his acceptance in "several after care programs";
- his "successful program[m]ing and clear conduct";
- his completion of numerous education courses; and
- his having served 2/3 of his sentence with good behavior. ECF No. 23 at 1–3.

Movant's request for early release arises under the Compassionate Release Act, and his alternative requests for home confinement or release to a halfway house arise under the Elderly Offender Pilot Program, 34 USCA § 60541(g), and 18 U.S.C. § 3624, as expanded by the CARES Act.

## II. COMPASSIONATE RELEASE

Compassionate release is discretionary, not mandatory. *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020).

### A. Legal Standard

### 1. The Compassionate Release Act

The Compassionate Release Act provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Section 3553(a) sentencing factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>(B) to afford adequate deterrence to criminal conduct;
>
>(C) to protect the public from further crimes of the defendant; and
>
>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

>(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>>(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>
>>(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>
>(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether

4

>>such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

> (5) any pertinent policy statement—

>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

>> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### 2. Applicable Caselaw and Commission Note

A prisoner who moves for compassionate relief must have "first file[d] a request with the BOP." *United States v. Franco*, 973 F.3d 465, 467–68 (5th Cir.), *cert. denied*, ___ U.S. ___, 141 S. Ct. 920 (2020); *see* 18 U.S.C. § 3582(c)(1)(A). This requirement is not jurisdictional, but it is mandatory. *Franco*, 973 F.3d at 467.

The plain language of the Compassionate Release Act provides three requirements that a prisoner denied relief by the BOP must satisfy: the prisoner must prove that (1) an "extraordinary and compelling reason" justifies the sentence reduction; (2) the relief sought is consistent with the Sentencing Commission's applicable policy statements; and (3) the 18 U.S.C. § 3553(a) sentencing factors weigh in favor of the requested relief. 18 U.S.C. § 3582(c)(1)(A); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). But the Sentencing Commission has not issued a policy statement since the First Step Act amended § 3582 to allow prisoners, not just the BOP, to file compassionate-release motions. *Shkambi*, 993 F.3d at 392. Thus, no applicable policy statement exists

5

for prisoner-filed motions. *See id.* Until the Sentencing Commission issues such a statement, a prisoner who files a compassionate-release motion after exhausting the BOP administrative requirements must show only that (1) an "extraordinary and compelling" reason for relief exists and (2) a sentence reduction would be consistent with the § 3553(a) sentencing factors. *Id.* at 392–93.

The Compassionate Release Act does not define "extraordinary and compelling." *See* 18 U.S.C. § 3582. For courts entertaining BOP-filed motions for compassionate release, the Sentencing Commission has concluded that the following circumstances amount to extraordinary and compelling reasons:

> **(A) Medical Condition of the Defendant.—**
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover.
>
> **(B) Age of the Defendant.—**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his . . . term of imprisonment, whichever is less.

**(C) Family Circumstances.—**

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.—**As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. 1.

Although the Sentencing Commission's description of extraordinary and compelling reasons "governs" the resolution of compassionate-release motions filed by the BOP, *United States v. Jackson*, 27 F.4th 1088, 1090 (2022) (citing *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.), *cert. denied*, 141 S. Ct. 2688 (2021), and *Shkambi*, 993 F.3d at 393), that description merely "informs" a district court's resolution of such a motion filed by the prisoner himself. *Id.* Thus, a district court reversibly errs by denying a prisoner's compassionate-release motion solely on the ground that it fails to provide extraordinary and compelling reasons under the Sentencing Commission's description. *See id.*

### B. Analysis

#### 1. Failure to Exhaust Remedies

Movant's failure to exhaust his BOP administrative remedies bars a compassionate release in the instant case because the exhaustion requirement is mandatory. *Franco*, 973 F.3d at 467–68. Movant neither alleges nor offers evidence that he filed a request with the BOP or otherwise exhausted his BOP remedies before filing his compassionate-release Motion. His failure to exhaust his BOP remedies does not deprive this Court of jurisdiction, but it does prevent this Court from granting his requested relief. *See id.* The Court concludes that the request for compassionate relief should be **DENIED without prejudice** on that basis.

### 2. Failure to Satisfy Burden on the Merits

Alternatively, even if Movant had properly exhausted his BOP remedies, based on the facts before it, this Court would have denied relief on the merits because Movant did not satisfy his burden to prove extraordinary and compelling reasons for an early release or his burden to persuade the court that his early release would be consistent with the sentencing factors. *See* 18 U.S.C. §§ 3553(a), 3582(c)(1)(A); *Shkambi*, 993 F.3d at 392–93.

### a. No Extraordinary and Compelling Basis for Compassionate Release

Movant's stated grounds for compassionate release do not rise to the level of "extraordinary and compelling" for six reasons. *First*, his conclusory denied-medical-treatment claim is based on the BOP's alleged refusal to treat him with unspecified medication prescribed by a local doctor after his Covid diagnosis but before his confinement in the fall of 2021. He does not allege that prison doctors arbitrarily made that decision or that they failed to prescribe required medication for a specific condition. *See Glenewinkel v. Carvajal*, No. 3:20-CV-2256-B, 2022 WL 179599, at *7 (N.D. Tex. Jan. 20, 2022) ("Moreover, the allegations about a lack of medical treatment are conclusory at best because they do not identify what medical treatment was denied to Plaintiffs, nor what medical treatment existed at that early stage in the pandemic."). And the scant medical records Movant does provide show that he tested negative for Covid the month after he went to prison. *See, e.g.*, *United States v. May*, No. 4:18-CR-199(2), 2021 WL 1572655, at *4 (E.D. Tex. Apr. 20, 2021) ("May's BOP medical records show that she tested positive for COVID-19 on January 21, 2021, and, as of February 5, 2021, she had recovered from the virus, as confirmed by a negative test result.").

*Second*, not discounting the records that show Movant contracted Covid and pneumonia in the summer before his prison confinement began in the fall of 2021, that negative Covid diagnosis in prison— along with the absence of medical evidence—belies his assertion that he continues to suffer Covid side effects and respiratory syndrome. *See id.*

8

Without these records, the Court cannot accurately evaluate Movant's arguments. *Cf. United States v. Pearce*, No. 3:19-CR-0088-B-1, 2022 WL 992738, at *3 (N.D. Tex. Apr. 1, 2022) (denying motion for compassionate release when the defendant did not provide medical records to substantiate his alleged medical conditions); *United States v. Farias-Valencia*, No. 3:14-CR-0160-B-5, 2022 WL 865897, at *3 (N.D. Tex. Mar. 23, 2022) (same); *United States v. Delgado*, No. 3:17-CR-242-B (01), 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020) (same).

*Third*, the generalized specter Movant raises of worse health conditions that he might suffer because he had Covid pneumonia in the past, because of his age, because of his close confinement, and because of his unvaccinated status applies to many in the institutionalized populations; it does not present extraordinary circumstances peculiar to Movant. *See United States v. Garcia*, No. 3:15-CR-0194-B-1, 2021 WL 347574, at *2 (N.D. Tex. Feb. 2, 2021); *Delgado*, 2020 WL 2542624, at *3 (noting that "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements").

*Fourth*, Movant's allegations and evidence would not satisfy the Sentencing Commission's definition of "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 cmt. 1. Even though Movant meets the age requirement in the Sentencing Commission's definition of "extraordinary and compelling," his allegations and evidence of his medical condition do not show that he is suffering from a terminal illness or a condition that significantly impairs his ability to provide self-care in prison. *See id.* His "Individualized Needs Plan" indicates that his Care Level is "Stable, Chronic Care" and he has no medical restraints other than he requires a lower bunk. Finally, even though he alleges that his spouse recently had a major surgery, he does not allege that she is incapacitated or that he would be her only available caregiver. *See id.*

*Fifth*, Movant's reliance on his "successful program[ming]," "clear conduct," "good conduct," and completion of "numerous education courses"—not all of which are supported by the record—is misplaced because such achievements "fall well below the threshold for a sentence reduction under § 3582, which requires a defendant's personal

9

circumstances to be extraordinary and compelling." *Garcia*, 2021 WL 347574, at *3.

*Sixth*, Movant's reliance on the conditions of his confinement, including lockdowns, quarantines, the absence of family visits, and the distance his family would have to travel to visit him absent lockdowns is likewise misplaced because those conditions are not distinctively Movant's. *See United States v. Longoria*, No. CR 2:12-1034, 2021 WL 3473496, at *2 (S.D. Tex. Aug. 3, 2021); *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

Thus, Movant has failed to establish an extraordinary and compelling reason to grant compassionate release.

### b. No Proof that Sentencing Factors Support Release

Even if Movant had exhausted the BOP administrative remedies and had established an extraordinary and compelling reason for compassionate release, consideration of the relevant § 3553(a) sentencing factors would not support granting that relief. *See* 18 U.S.C. § 3582(c)(1)(A); *Shkambi*, 993 F.3d at 392–93. The sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

*Chambliss*, 948 F.3d at 693 n.3.

Movant has a long history of criminal activity. The record indicates that before his 2007 federal conviction for conspiracy to possess with intent to distribute methamphetamine, Movant was convicted for felony

10

possession of marijuana and failure to purchase a state tax stamp in a Texas state district court in 1993, sentenced to five years' confinement, and ordered to pay fines. ECF No. 2 at 5–12.

After he was released from federal prison in 2020 on his federal drug conspiracy charge, Movant did not do well on supervised release. While under supervision, he was arrested for new criminal offenses, used and possessed illegal controlled substances, failed to attend required drug treatment, and failed to submit to substance abuse testing.

All of these acts and omissions make him a risk to the community, especially considering his length of criminality and how soon after his last compassionate release he began violating the law and his conditions of release. Granting Movant a further early release would not inspire respect for the law or deter future criminal activity, nor would it reflect the seriousness of his conduct and provide just punishment. The Court therefore concludes that the sentencing factors weigh against granting Movant an early release.

### c. Resolution

Movant has not shown an extraordinary and compelling reason for reducing his sentence, nor has he shown that the sentencing factors support such a reduction. Even if Movant had exhausted his administrative remedies, his Motion for compassionate release should be **DENIED without prejudice**.

### III. HOME DETENTION OR CONFINEMENT

Movant alternatively requests this court to release him to home confinement or a halfway house; the law does not allow this court to do so.

Movant's home-confinement requests stem from the Elderly Offender Pilot Program, 34 U.S.C. § 60541(g), and 18 U.S.C. § 3624 as modified by the Cares Act. Under either statute, this Court lacks jurisdiction to grant his requested relief. *See* 18 U.S.C. § 3621(b); *Melot v. Bergami*, 970 F.3d 596, 599–600 (5th Cir. 2020) (holding that federal courts lack jurisdiction "to place an offender in the [Elderly Offender] Program; that authority is given to the Attorney General [("AG")]" and

concluding that "Congress has vested the executive branch, not the judicial branch, with the power to decide which prisoners may participate in the Program"); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020) (holding the Court has no jurisdiction under § 3624 to order home confinement or to compel the BOP to release a defendant to home confinement, even with the Cares Act expansions).

Movant's halfway-house placement request stems from 18 U.S.C. § 3624(c). *See United States v. Dillard*, No. 6:18-CR-326-ADA, 2022 WL 545074, at *1 (W.D. Tex. Feb. 23, 2022). Just as this Court has no authority to order home confinement, it has no authority to order a defendant's confinement in a halfway house. *See id.* ("[T]he [AG]—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. . . . [T]his court does not have the authority to order that [the defendant] be transferred to a halfway house. Only the BOP can make that determination.") Accordingly, Movant's alternative requests that this court order home confinement or halfway-house placement should be **DENIED without prejudice** for want of jurisdiction.

## IV. CONCLUSION

Based on the above analysis, the Court **DENIES** Movant's Motion. The Court **DENIES** Movant's request for compassionate release **without prejudice.** Movant is permitted to file a subsequent motion for compassionate release if he can (1) exhaust his BOP remedies; (2) provide evidence supporting a finding that an extraordinary and compelling reason justifies a sentence reduction; and (3) provide evidence and argument that the sentencing factors weigh in favor of relief. The Court **DENIES without prejudice** Movant's alternative requests for home confinement or placement in a halfway house for want of jurisdiction.

Signed April 21, 2022.

_____
MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE